IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:08cr79 (JCC) |
| KYLE DUSTIN FOGGO, | ) | |
| a/k/a "DUSTY" FOGGO, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the Government's Motion for Amended Protective Order and Defendant's Motion for Entry of Discovery Order.  For the following reasons, the Court will grant the Government's Motion and deny Defendant's Motion.

**I. Background**

On February 13, 2007, Defendant Kyle Dustin Foggo ("Defendant") and co-conspirator Brent Roger Wilkes ("Wilkes") were indicted in the Southern District of California on an 11-count indictment alleging conspiracy, honest services wire fraud, and § 1957 money laundering.  During all times pertinent to this case, Defendant was a high-ranking official with the Central Intelligence Agency ("CIA") and Wilkes was a government contractor.  As alleged in the initial indictment, Defendant and Wilkes, who were lifelong friends, utilized a shell corporation to enable Defendant to steer $2 million in procurement services

1

contracts with the CIA to Wilkes.[1]  This initial indictment was followed on May 10, 2007 by a 30-count superseding indictment in the Southern District of California that alleged additional wire fraud and money laundering counts against Defendant and Wilkes. These additional counts related to a number of proposed projects, including a $132 million contract to provide air support services to the CIA, which Defendant, after assuming the position of Executive Director of the CIA, directed to Wilkes.  The case was then transferred to the Eastern District of Virginia on February 25, 2008.  Following transfer, on May 20, 2008, an Eastern District of Virginia grand jury returned a 28-count superseding indictment alleging wire and mail fraud, conflict of interest, § 1957 money laundering, conspiracy to commit § 1957 money laundering, and false statements.

Prior to the second superseding indictment, on April 29, 2008, the Government filed the instant Motion for Amended Protective Order and Defendant filed the instant Motion for Entry of Discovery Order.  The relevant background to these Motions is as follows.  As to the Government's Motion, on March 5, 2007, the Honorable Larry A. Burns of the Southern District of California

---

[1] Wilkes was also separately charged in a conspiracy to bribe former Congressmen Randy "Duke" Cunningham, along with a co-defendant named John Michael.  On November 5, 2007, Wilkes was convicted of all counts, including conspiracy, honest services wire fraud, bribery, and money laundering.  On February 8, 2008, Wilkes was sentenced to 144 months' imprisonment, ordered to forfeit $636,116.50, and required to pay a $500,000 fine and $1,300 in penalty assessments.

issued a Protective Order under Section 3 of the Classified Information Procedures Act ("CIPA").  The Protective Order was issued over Defendant's objection that certain provisions of the Order – those aimed at safeguarding classified information – should apply to all parties, not just defense counsel.  Defendant moved to modify the Protective Order on March 15, 2007, which Judge Burns rejected at the conclusion of a March 19, 2007 hearing on the matter.

As to Defendant's Discovery Motion, on March 1 and 12, 2007, while the case was pending in the Southern District of California, Defendant filed a Motion for a Bill of Particulars and a Motion for Discovery, respectively.  On April 2, 2007, Judge Burns held a hearing on these motions.  At the hearing, the Court attempted to convince the Government to turn over *Jencks* material sooner than 30 days before trial, while acknowledging that it could not force the Government to do so.  The Government then agreed to early production of *Jencks* material pending discussion with co-counsel.  In an April 6, 2007 letter from defense counsel to Assistant U.S. Attorney Phillip L.B. Halpern ("AUSA Halpern") acknowledging receipt of 58 CDs/DVDs, defense counsel agreed to table its motions for a bill of particulars and for discovery based on the Government's agreement to early production of *Jencks* material.  In a letter dated May 11, 2007 from AUSA Halpern to defense counsel, the Government acknowledged

that it had agreed to produce unclassified *Jencks* material, conditioned on Defendant's willingness to withdraw his motions and AUSA Halpern's consultation with his colleagues.  The Government then expressed its willingness to produce *Jencks* material 70 days prior to any trial date for which defense counsel could confirm that they would be ready to proceed.

Subsequently, at a May 14, 2007 hearing, Judge Burns set an October 23, 2007 trial date, prompting the Government to agree to turn over the *Jencks* material to Defendant.  On June 11, 2007, defense counsel sent a letter to AUSA Halpern reminding the Government of its commitment.  The Government responded four days later, explaining that the delay was caused in large part by the fact that the vast majority of *Jencks* material was classified and because the Government was waiting for defense counsel to receive the necessary security clearances.  Soon thereafter, the Government began producing *Jencks* material.

## II. Analysis

### A. The Government's Motion for Amended Protective Order

The Government seeks the entry of an Amended Protective Order that is similar in substance to the Order entered by Judge Burns on March 5, 2007.  Defendant raises objections to this proposed Order similar to those raised before Judge Burns, and proposes a protective order that would require that: (1) both parties submit pleadings with potentially classified information

to the Court Security Officer; (2) all materials containing

classified information or potentially classified information be

prepared in a secure area; (3) discussions of classified

information not occur over unsecured telephone lines; and (4)

members of the prosecution team execute the same Memorandum of

Understanding required of the defense team.

　　　　Defendant's push to apply multiple provisions of the

protective order to the Government stems from his concern

regarding the potential harm that would result from the

Government's leak of classified information to outside parties.

To bolster his claim, Defendant points to several prior incidents

in this case where the media published articles about the case

before Defendant's initial indictment.  These incidents include

an Associated Press article published on February 1, 2007

indicating that prosecutors were seeking charges against

Defendant and Wilkes.  In March 2007, counsel for Defendant and

Wilkes brought these media reports to the attention of Judge

Burns and moved to compel an investigation into alleged

violations of Fed. R. Crim. P. 6(e).  In a May 14, 2007 hearing,

Judge Burns noted that the Government had launched an independent

investigation into the leaks and stated that he would wait for

the result of that investigation before authorizing another one.

The Government's investigation, however, did not unearth the

alleged leaker and the charge that members of the press were

shown draft copies of the indictment prior to its return was never substantiated.  Moreover, while the Government initially admitted that a Rule 6(e) violation had occurred, it later retracted that concession.

The Government now argues that Judge Burns has already decided a rule of law regarding the issue Defendant raises, and that as the law of the case the decision should continue to control the issue in subsequent stages of the litigation. Certainly, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)(citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)).  This doctrine applies "as much to the decisions of a coordinate court in the same case as to a court's own decision."  *Christianson*, 486 U.S. at 816.  However, while the law of the case doctrine "directs a court's discretion, it does not limit [its] power."  *Arizona v. California*, 460 U.S. 605, 618 (1983).  As such, "it is not improper for a court to depart from a holding if convinced that it is clearly erroneous and would work a manifest injustice."  *Id.* at 619 n.8.

Applying the doctrine here, the Government seeks the entry of an Amended Protective Order that is substantially similar to the Protective Order entered by Judge Burns.  The

requested non-cosmetic changes that do exist were proposed at the behest of the newly designated Court Security Officer ("CSO"), and some of these changes actually inure to the benefit of defense counsel by loosening certain restrictions in the Protective Order.  *See, e.g.,* Proposed Amended Protective Order & Protective Order, Exs. 1 & 2 to Government's Reply to Def.'s Opp'n, ¶¶ 9, 12.  Judge Burns held a hearing on the issue of Defendant's proposed modifications and rejected those arguments. *See* Hr'g Tr., Mar. 19, 2007, Ex. 6 to Government's Reply to Def.'s Opp'n.  While Defendant now raises objections to an additional five sections of the Protective Order, these objections are of the same tenor as those raised before Judge Burns.  Thus, the Court finds that Defendant's objections have already been thoroughly considered and decided.

Moreover, the Court does not find that Judge Burns's ruling was clearly erroneous or would work a manifest injustice. The purpose of CIPA is to "harmonize a defendant's right to obtain and present exculpatory material . . . and the government's right to protect classified material . . . ." *United States v. Rosen*, 487 F. Supp. 2d 703, 706 (E.D. Va. 2007)(quoting *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996)).  This harmonization is facilitated by the issuance of a CIPA § 3 Protective Order, which is entered upon motion of the United States and governs the disclosure of classified

7

information to defense counsel and defendants.  *See*, *e.g., id.*.
While the Court shares Defendant's concern about the disclosure
of information by the Government based on prior incidents in this
case, a CIPA § 3 Protective Order is designed to protect against
disclosure by the defense.  *See* 18 U.S.C. App. 3 § 3.  Given the
driving purpose of CIPA § 3, the Court finds that Judge Burns's
decision not to accommodate Defendant's modifications to the
Protective Order was not clearly erroneous.  Consequently, the
Court will enter the Government's Proposed Amended Protective
Order.

### B. Defendant's Motion for Entry of Discovery Order

After this case was transferred to the Eastern District
of Virginia, the Government submitted a standard discovery order
that did not reflect the parties' previous agreement regarding
the ongoing production of *Jencks* materials.  In his Motion for
Entry of Discovery Order, Defendant objects to this standard
discovery order and seeks an order that is consistent with the
parties' previous agreement and the law of the case.

Defendant first contends that the agreement with the
Government must be followed because it is the law of the case,
which remains unaffected by the transfer of this matter to the
Eastern District of Virginia.  However, the law of the case
doctrine applies "when a court decides upon a rule of law,"
*Aramony*, 166 F.3d at 661, and no such decision was made here.

8

While Judge Burns did express his preference for early production
of *Jencks* material, he did not, and had no authority to, order
the Government to do so.  *See United States v. Lewis*, 35 F.3d
148, 151 (4th Cir. 1994)("The district court may not require the
government to produce Jencks Act material relating to one of its
witnesses until *after* the witness has testified.");  *United States
v. Spagnuolo*, 515 F.2d 818, 821 (9th Cir. 1975)(same).  In fact,
Judge Burns explicitly stated during the May 14, 2007 hearing
that he understood that he had no authority to order the
Government to turn over witness statements prior to the witness's
testimony.  Hr'g Tr. 91-92, May 14, 2007, Ex. 3 to Government's
Opp'n to Def.'s Mot.  Instead, Judge Burns simply indicated that
it was convention in the Southern District of California to turn
over *Jencks* material at a much earlier time than is required by
law.  *Id.* at 92.  Accordingly, because there was no court order
deciding a rule of law on this issue and a simple agreement
between parties cannot constitute the law of the case, the Court
finds that it is not bound by any prior decision to follow the
parties' agreement.

        Defendant also argues that the discovery agreement must
be given effect because it has been followed.  As the Government
points out, Defendant does not explain why compliance with a past
agreement between the parties should be a basis for this Court to
codify the agreement in its Order concerning future discovery.

9

Moreover, based on the Court's understanding of the agreement, it was conditioned in part on Defendant making a firm commitment to proceed to trial on October 23, 2007.  That date has come and gone, and with it much of the benefit that the Government would have derived from the agreement.  Consequently, the Court finds that there is simply no legal basis for enforcing the agreement against the will of the Government, and will deny Defendant's Motion.

### III. Conclusion

For these reasons, the Court will grant the Government's Motion for Amended Protective Order and deny Defendant's Motion for Entry of Discovery Order.

June 9, 2008
Alexandria, Virginia

_____/s/_____
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE