IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
UNITED STATES OF AMERICA      )
                              )
          v.                  )
                              )    1:08cr79 (JCC)
KYLE DUSTIN FOGGO,            )
     a/k/a "DUSTY" FOGGO,     )
                              )
     Defendant.              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion
to Dismiss and Motion for a Bill of Particulars.  For the
following reasons, the Court will deny in part Defendant's Motion
to Dismiss and take under advertisement the question of whether
Counts 27 and 28 should be dismissed.  The Court will also deny
Defendant's Motion for a Bill of Particulars.

## I. Background

On February 13, 2007, Defendant Kyle Dustin Foggo
("Defendant") and co-conspirator Brent Roger Wilkes ("Wilkes")
were indicted in the Southern District of California ("SDCA") on
an 11-count indictment alleging conspiracy, honest services wire
fraud, and § 1957 money laundering.  During all times pertinent
to this case, Defendant was a high-ranking official with the
Central Intelligence Agency ("CIA") and Wilkes was a government
contractor.  As alleged in the initial indictment, Defendant and

1

Wilkes, who were lifelong friends, utilized a shell corporation to enable Defendant to steer $2 million in procurement services contracts with the CIA to Wilkes.[1]  The initial indictment was followed on May 10, 2007 by a 30-count superseding indictment ("FSI"), which alleged additional wire fraud and money laundering counts against Defendant and Wilkes.  These additional counts related to a number of proposed projects, including a $132 million contract to provide air support services to the CIA, which Defendant, after assuming the position of Executive Director of the CIA, attempted to steer to Wilkes.

In preparing his defense against these charges, Defendant made extensive discovery requests.  One of these requests included an attempt to gain access to two compartments of Sensitive Compartmented Information ("SCI").  Defendant sought this information in order to prepare for voluntary pre-trial interviews with current and former CIA employees.  In response to his request, the Government argued that Defendant was not entitled to the SCI access unless he disclosed the name of the compartments and the nature of the information he was seeking. At a hearing on August 15, 2007, Defendant asked the Court to

---

[1] Wilkes was also separately charged in a conspiracy to bribe former Congressmen Randy "Duke" Cunningham, along with a co-defendant named John Michael.  On November 5, 2007, Wilkes was convicted of all counts, including conspiracy, honest services wire fraud, bribery, and money laundering.  On February 8, 2008, Wilkes was sentenced to 144 months' imprisonment, ordered to forfeit $636,116.50, and required to pay a $500,000 fine and $1,300 in penalty assessments.  The charges against Wilkes in the underlying case were dismissed on February 19, 2008 upon the Government's motion.

order the Government to designate a separate attorney who was not a member of the prosecution team to review Defendant's request for access to the SCI.  On September 4, 2007, the Court resolved the dispute by ordering Defendant to disclose to the prosecution the specific compartments to which he sought access.  If the Government objected to the relevancy of Defendant's request, a "taint attorney" would be required to litigate on behalf of the Government so as not to force defense counsel to reveal their trial strategy to the prosecution team.  On September 12, 2007, Defendant informed the Government that he sought access to "the compartment pertaining to the CIA terrorist detention and interrogation program" and "the compartment or category of compartmentalized information pertaining to the names and identities of any other individuals or entities the CIA considered, approached, or utilized to provide cover for CIA Air Operations."  September 12, 2007 Letter from P. Butler to P. Halpern, Ex. H to Def.'s Mot. to Dismiss.

Defendant also sought on two occasions to have the case transferred from the SDCA to the Eastern District of Virginia ("EDVA").  On April 17, 2007, Defendant filed a motion to transfer venue and to sever his case from the case against Wilkes.  Defendant argued that "Virginia is the natural center of gravity for the charges against him" and that severance would not require the Government to duplicate its efforts in separate

3

trials "because the majority of witnesses, documentary evidence
and testimony will be substantially different."  Def.'s Mot. for
Severance and Transfer of Venue, Ex. A to Government's Resp. &
Opp'n to Def.'s Mot. to Dismiss at 19-20.  The Court denied this
motion without prejudice on May 14, 2007.  Defendant renewed his
motion to sever and transfer on December 11, 2007, again arguing
that "the natural center of gravity of the events alleged in the
indictment lies in Virginia and [Defendant], the CIA, and the
vast majority of potential witnesses and documents reside in the
Washington, D.C. area."  Def.'s Renewed Mot. for Severance and
Transfer of Venue, Ex. E to Government's Resp. & Opp'n to Def.'s
Mot. to Dismiss at 1.  In response, the Government indicated that
it did not oppose transfer because it had recently uncovered
evidence that would support additional charges for which venue
was proper only in the EDVA.  The case was then transferred to
the EDVA on February 19, 2008.

Following transfer, on May 20, 2008, an EDVA grand jury
returned a 28-count second superseding indictment (the "SSI")
against Defendant alleging wire and mail fraud, conflict of
interest, § 1957 money laundering, conspiracy to commit § 1957
money laundering, and false statements.  The bulk of the counts,
wire and mail fraud, stem from Defendant's scheme (1) to defraud,
including depriving the United States and its citizens of their
right to Defendant's honest services, and (2) to obtain money and

4

property by means of materially false and fraudulent pretenses
and representations.  The SSI differs from the FSI in several
ways.  First, the FSI alleges a conspiracy between Defendant and
Wilkes to commit honest services wire fraud, as well as an actual
scheme to defraud devised by both men, whereas the SSI does not
allege any wire fraud conspiracy and alleges an actual scheme
devised by Defendant alone.  Second, the SSI contains allegations
concerning Defendant and an individual known as "E.R.," which the
FSI does not.  Third, while the FSI contains eight counts
relating to air support operations, the SSI contains only one,
and integrates the other air operation counts into the
allegations describing the means used in execution of the
fraudulent schemes.  Finally, the SSI adds counts for mail fraud,
conflict of interest, and false statements.

On June 6, 2008, Defendant filed a Motion for a Bill of
Particulars pursuant to Fed. R. Crim. P. 7(f).  Defendant then
filed a Motion to Dismiss the SSI on June 12, 2008.  Because the
Motion to Dismiss, if granted in full, would render moot
Defendant's Motion for a Bill of Particulars, the Court will
address the Motion to Dismiss first, and turn to the other Motion
only if necessary.

## II. Motion to Dismiss the SSI

Defendant offers four reasons why the SSI should be
dismissed in its entirety or in part: (1) the Government violated

Defendant's due process rights by manipulating the grand jury process; (2) the SSI impermissibly charges multiple offenses in a single count; (3) the SSI impermissibly charges a single offense in multiple counts; (4) the false statement charges in Counts 27 and 28 fail to state an offense.  The Court will address each of these issues in turn.

### A. Manipulation of the Grand Jury Process

The grand jury serves as "a primary security to the innocent against hasty, malicious and oppressive persecution" by "standing between the accuser and the accused . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice or personal ill will."  *Wood v. Georgia*, 370 U.S. 375, 390 (1962).  Nonetheless, the Fourth Circuit has recognized that "courts should not intervene in the grand jury process absent [a] compelling reason."  *United States v. Moss*, 756 F.2d 329, 332 (4th Cir. 1985)(internal citations and quotations omitted); *United States v. Mills*, 995 F.2d 480, 487 (4th Cir. 1993)(noting that courts "may not quash indictments when the errors that produce them, such as prosecutorial misconduct . . ., do not affect substantial rights").  A presumption of regularity attaches to a grand jury's proceedings, and the burden falls on the defendant to overcome that presumption.  *Id.* at 332.

It is axiomatic that the Government may not use the

grand jury as a tool "to [achieve] a tactical advantage by impairing the ability of a defendant to mount an effective defense." *United States v. Sherman*, 150 F.3d 306, 313 (3rd Cir. 1998)(quoting *United States v. Ciampaglia*, 628 F.2d 632, 639 (1st Cir. 1980)); *see also United States v. Carrasco*, 968 F. Supp. 948, 951 (S.D.N.Y. 1997)("It is not appropriate for the Government to use the grand jury as a tool for making strategic decisions at the expense of defendant's rights.").  Therefore, "[a]n intentional delay to gain a tactical advantage is inherently improper and violates fifth amendment due process rights." *United States v. Dennis*, 625 F.2d 782, 794 (8th Cir. 1980).  Furthermore, prosecutors "cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation." *United States v. Brothers Const. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000)(citing *Moss*, 756 F.2d at 332).  Once a defendant is indicted, "the Government is barred from employing the grand jury for the 'sole or dominant purpose' of developing additional evidence against the defendant." *Id.*; *see also United States v. Apperson*, 441 F.3d 1162, 1189 (10th Cir. 2006)("[T]he grand jury process is abused when the prosecutor uses it for the primary purpose of strengthening the Government's case on a pending indictment or as a substitute for discovery.")(internal citations and quotations omitted).  However, the Government is not barred from making "a good-faith

inquiry into charges that are not covered in the indictment, 'even if it uncovers further evidence against an indicted person.'" *Brothers Const. Co.*, 219 F.3d at 314 (quoting *Moss*, 756 F.2d at 332).  "[W]here there is another legitimate purpose behind the grand jury investigation, the proceeding would not be improper merely because the Government may derive an incidental benefit." *United States v. Gibbons*, 607 F.2d 1320, 1328 (10th Cir. 1979).

Defendant contends that the Government has abused the grand jury process and violated his Fifth Amendment Due Process rights because the driving purpose behind the Government's decision to seek the SSI was to thwart his defense.  Defendant argues that, in the year between the FSI and the SSI, he made numerous discovery requests – including the request for access to two SCI compartments – from which the Government acquired significant information regarding his defense strategy.  He accuses the Government of using that information, as well as old information that it had in its possession prior to filing the initial indictment, to frustrate his defense.

Defendant's accusations are based on what he perceives to be the significant differences between the FSI and the SSI. Defendant argues that the overarching theory of the FSI was that Defendant conspired with Wilkes to commit wire fraud and engage in monetary transactions, while the SSI eliminates the conspiracy

8

allegations and structures the indictment around the allegation that Defendant alone devised schemes under the mail and wire fraud statutes. He also points to the smaller role that the air operations charges play in the SSI, as well as to the new allegations concerning E.R. Defendant complains that this new theory of the case will require him to develop his defense anew, discard his extensive work on the allegations that were dropped, develop from scratch defenses to new charges, and reformulate his defenses to allegations that have been shuffled around.

In response, the Government makes several arguments that the Court ultimately finds persuasive. First, the Government argues that the reason it did not bring the charges concerning E.R. in a previous indictment was because venue for those charges did not lie in the SDCA. Instead, venue was appropriate only in the EDVA, the district to which the case was transferred upon Defendant's request. The Government's decision not to object to transfer was based in part on the fact that transfer would allow it to bring additional charges against Defendant, a motivation that was made known to Defendant. The Government also explains that it was unable to bring the charges involving E.R. at an earlier time due to the fact that it did not uncover the extent to which Defendant influenced the CIA to hire E.R. as an employee until after the FSI was returned. There is nothing improper about the Government's use of the grand jury for

9

a good-faith inquiry into charges that were not covered in the initial indictment. *See Brothers Const. Co. of Ohio*, 219 F.3d at 314.

Second, as to Defendant's claim that the Government altered its theory of the case to thwart his defense, the Government contends that the underlying theory has not changed: the case has been, and continues to be, about how Defendant abused his office as a CIA official to secure direct benefits for his intimate friends and indirect benefits for himself. Defendant himself acknowledged as much in a pleading filed on May 11, 2007, one day after the return of the FSI but a year before the SSI. There, Defendant stated that this case is about how Defendant worked with others to "'devise a material scheme to defraud the United States and its citizens of *defendant Mr. Foggo's* honest services . . .' and to launder money derived from *Mr. Foggo's* honest services wire fraud." Def.'s Reply in Support of Mot. for Severance and Transfer of Venue, Ex. B to Government's Resp. & Opp'n to Def.'s Mot. to Dismiss at 6 (emphasis in original). The Government also notes that all of the SSI's substantive charges that relate to wire fraud and money laundering – except those pertaining to E.R. – were listed as either objects of the conspiracy or as actual charges in the FSI. *See* FSI ¶¶ 16-20. In other words, Defendant has faced these wire fraud and money laundering charges at least since the FSI, and

10

the only difference now is that they are not brought within the context of a conspiracy with Wilkes.

There is nothing improper about the Government bringing a superseding indictment that contains new charges. Here, those new charges are the counts relating to E.R., the mail fraud counts, the conflict of interest counts, and the false statement counts. The mere fact that the Government brought new charges does not necessarily mean that it manipulated or abused the grand jury. In fact, the Government's explanation – that it brought the SSI to add charges in light of new evidence of Defendant's misconduct – is equally plausible. As to the Government "reformulating" the case by dropping the conspiracy count and de-emphasizing the air operations allegations, those acts by themselves hardly qualify as using the grand jury as a tool "to [achieve] a tactical advantage by impairing the ability of a defendant to mount an effective defense." *Sherman*, 150 F.3d at 313. The burden of proving abuse and manipulation of the grand jury process falls on Defendant, and here there is no indication that the Government purposefully and willfully used any information it may have obtained during discovery to thwart his defense. Because Defendant has not met his burden, the Court will deny this portion of the Motion to Dismiss.

## B. Multiple Offenses in a Single Count

Defendant also moves for the SSI's dismissal on the

11

ground that at least twenty-two of the twenty-eight counts are duplicitous.  An indictment is duplicitous "where a single count joins two or more distinct and separate offenses." *United States v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005); *see also United States v. Berardi*, 675 F.2d 894, 897 (7th Cir. 1982).  A count is not duplicitous if it "charges the commission of a single offense by different means." *Berardi*, 675 F.2d at 897.  The primary problem with duplicity "is that there is no way in which the jury can convict of one offense and acquit of another offense contained in the same count." *United States v. Correa-Ventura*, 6 F.3d 1070, 1081 (5th Cir. 1993)(internal quotations omitted).

Defendant first argues that the fraud counts and the monetary transactions charges are duplicitous because they each allege two separate schemes: a scheme to defraud and a scheme for obtaining money or property by means of false or fraudulent pretenses and representations.  According to Defendant, these schemes represent separate offenses and therefore must be charged in separate counts.  Failure to so charge raises the possibility that some members of the jury will conclude that the evidence supports only a scheme to defraud, while others will conclude that the evidence supports only a scheme to obtain money.  Defendant cites numerous cases to support his theory.  *See, e.g., United States v. Cronic*, 900 F.2d 1511, 1514 (10th Cir. 1990); *United States v. Scott*, 701 F.2d 1340, 1343 (11th Cir. 1983);

12

*United States v. Ashley*, 905 F. Supp. 1146, 1155 (E.D.N.Y. 1992).

The Court is not persuaded that these cases dictate dismissal of the SSI.  In *Cronic*, the Tenth Circuit held that "a scheme to defraud[] and scheme to obtain money by means of false or fraudulent pretenses . . . are separate offenses."  900 F.2d at 1513.  However, the question of whether charging both schemes in a single count was duplicitous was not an issue before the Court, and the Court made no pronouncement on the matter.  *Id.* In *Scott*, the Eleventh Circuit noted that the phrasing of the mail fraud statute "prohibits two separate acts, each constituting an independent ground for prosecution and conviction."  701 F.2d at 1343.  The Court also remarked, however, that the Government's approach in "dividing the statute" and only charging a scheme to obtain property was "novel."  *Id.* at 1344.  Finally, the Court in *Ashley* also found that the two schemes were separate offenses.  905 F. Supp. at 1155.  But no duplicity challenge was ever made, and the Court ultimately rejected the defendant's motion to dismiss an indictment that combined both of the fraud theories.  *Id.* at 1155-57.

The Government counters Defendant's case law by citing *Schad v. Arizona*, 501 U.S. 624 (1981) and *United States v. Lyons*, 472 F.3d 1055 (9th Cir. 2007).  In *Schad*, the Supreme Court held that a jury need not agree upon a single means of committing a particular offense, as long as they "agree upon the bottom line."

13

*Schad*, 501 U.S. at 631-32.  The Court noted that this principle applied to both the *actus reus* element of an offense as well as the element of *mens rea*.  *Id.* at 632.  In *Lyons*, the defendant challenged his mail fraud conviction based on the trial court's failure to instruct the jury to be unanimous on the theory of mail fraud liability by finding either a scheme to defraud or a specific misrepresentation.  *Lyons*, 472 F.3d at 1068.  The Ninth Circuit, consistent with *Schad*, found that "jurors need not be unanimous as to a particular theory of liability so long as they are unanimous that the defendant has committed the underlying substantive offense."  *Id.* at 1069.  Because the scheme to defraud and the scheme to obtain money or property by means of false or fraudulent pretenses both involved the same underlying statutory offense – a violation of 18 U.S.C. § 1341 – the Court held that the jurors did not need to be unanimous as to a particular theory of liability.  *Id.*  Implicit in this holding, of course, is the notion that the two types of schemes are not separate offenses but rather separate means of committing the same offense.

        In short, the case law on this issue is at best mixed, and Defendant fails to cite a single case where a court actually struck down as duplicitous an indictment that alleged both types of mail and wire fraud schemes in the same count.  The Court is not persuaded that the case law dictates this outcome, and does

14

not wish to break new ground here.  Therefore, the Court finds
that Defendant has failed to meet his burden of demonstrating
that the indictment is improperly duplicitous by alleging both
schemes in the same counts, and will deny this portion of the
Motion to Dismiss.

Defendant also argues that the fraud counts and
monetary transactions charges are duplicitous because they allege
two separate and distinct schemes: one scheme that was directed
at monetary and material benefits for Defendant through CIA
contracts with Wilkes, and a second distinct scheme that was
directed at obtaining employment for E.R.  Defendant expresses
concern that charging these different schemes in the same counts
creates a high likelihood that the jury will find that the
evidence supports only one of the two alleged schemes, but impose
liability for all of the counts, even if they pertain to a scheme
that has not been proven.

In support of his argument, Defendant relies heavily on
*United States v. Mastelotto*.  717 F.2d 1238, 1244 (9th Cir.
1983)(overruled on other grounds by *United States v. Miller*, 471
U.S. 130, 135 (1985)).  In *Mastelotto*, the Ninth Circuit held
that a court facing this type of duplicity challenge must
determine "whether the indictment may be read to allege a single
unified scheme in each count," and the central question for a
court is "the breadth of the fraudulent activity alleged in the

15

count, that is, whether it all falls within one unitary 'scheme to defraud.'"  *Id.*  *Mastelotto* provided the relevant factors that a court must examine to answer this question, which include: "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals."  *Id.* at 1245 (quoting *United States v. Zemek*, 634 F.2d 1159, 1168 (9th Cir. 1980)).  The Court also noted that "the defrauding of different people over an extended period of time, using different means and representations, may constitute but one scheme."  *Id.* (quoting *Owens v. United States*, 221 F.2d 351, 354 (5th Cir. 1955)).

Some examples of these types of duplicity challenges are helpful.  The case in *Mastelotto* involved allegations against four different defendants and a decade's worth of fraudulent transactions committed through three different corporations, all of which were engaged in the processing and sale of oil products. These transactions fell within two categories: (1) "mislabeling" transactions, which allowed the oil to be sold at a higher price than accurate labeling would have yielded; and (2) "corporate sale" transactions, which exaggerated the financial positions of the corporations selling the products through the concealment of the mislabeling transactions.  *Id.* at 1241-42.  The Court had no problem concluding that the different transactions were part of a

16

unitary scheme.  *Id.* at 1245.

In another Ninth Circuit case, *Zemek*, fifteen defendants were charged in a single multi-year conspiracy that involved conduct ranging from mail fraud to murder, all in connection with an attempt to control a local tavern industry. One defendant contended that his participation in the conspiracy was limited to the harassment and extortion of an alleged informant, which occurred five years after the overall conspiracy commenced, involved only one-third of the same participants, and did nothing to advance the overall goal of controlling the tavern industry.  *Id.* at 1167-68.  The Court nevertheless found that the matter relating to the informant and the primary activities of the conspiracy were sufficiently similar in time and place, participants, and methods so as to constitute one overall conspiracy.  *Id.* at 1168.

In a case cited by Defendant, *United States v. Hinton*, the district court found that an indictment that charged one count of bank fraud, yet embraced 128 transactions executed in furtherance of frauds against six separate financial institutions, was duplicitous.  127 F. Supp. 2d 548, 556 (D.N.J. 2000).  In reaching this conclusion, the Court noted that "[t]he dates and alleged perpetrator(s) for a particular institution's transactions do not generally overlap, no transaction was directed at more than a single institution, and none of the

17

accounts used exists in more than one bank." *Id.* Furthermore, "different confederates were allegedly employed in contacts with the defrauded banks," and, if the defendant was convicted, "it would not be possible to determine which aspects of this so called unified scheme had been proved as to which financial institutions." *Id.*

Defendant offers several reasons why the SSI alleges two separate schemes. First, Defendant claims that the natures and goals of the alleged schemes were different: one was directed at obtaining monetary and other material benefits for Defendant by securing government contracts for Wilkes and his companies, and the other was directed at securing employment for E.R. Second, the key participants in the two schemes were different. In one, the key participants were Wilkes and his nephew, and in the other, E.R. alone. Third, the allegations concerning E.R. span less than a year, and are a significantly smaller portion of the 105 total "means used in execution of the scheme" listed in the SSI. By contrast, the allegations concerning Wilkes and his nephew span over three years and constitute the vast bulk of the means used to execute the scheme. In addition, the allegations concerning E.R. involve the job application process and everyday events such as dinners, while the allegations concerning Wilkes and his nephew deal with affirmative actions to secure contracts.

Despite Defendant's argument, the Court finds that the

18

SSI alleges a unitary scheme.  It is undisputed that Defendant himself is the epicenter of the purportedly separate schemes. Because Defendant's abuse of office while working for the CIA is the heart of all of these allegations, the public generally – and the CIA particularly – are the common victims.  Moreover, the nature and goals of the purportedly separate schemes are not as disparate as Defendant claims.  In each case, the Government contends that Defendant misused his position to obtain money and opportunities for others who were close to him, and achieved those ends by concealing his close connection with those individuals and misrepresenting their qualifications.  The Government further contends that Defendant also received immediate benefits for his favors: from Wilkes, he received expensive meals and trips, along with the promise of future benefits as Wilkes's executive officer; from E.R., he received extra-marital sexual companionship and the promise of future benefits as E.R.'s husband.  All of these factors combine to form one unitary scheme.  Consequently, Defendant's duplicity challenge fails, and the Court will deny this portion of Defendant's Motion to Dismiss.

### C. A Single Offense in Multiple Counts

Defendant contends that Counts 9, 11, 12, and 14 of the SSI, which allege wire fraud violations each time E.R. received a paycheck, are impermissibly multiplicitous.  Mulitiplicity

involves "charging a single offense in more than one count in an indictment." *United States v. Colton*, 231 F.3d 890, 908 (4th Cir. 2000)(quoting *United States v. Mancuso*, 42 F.3d 836, 847 n.11 (4th Cir. 1994)).  The multiplicity doctrine finds its roots in the Fifth Amendment's Due Process Clause, which "assure[s] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Id.* (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).  "The key to determining whether certain counts are multiplicitous . . . is whether Congress intended to authorize cumulative punishment for the same or similar conduct." *United States v. Teplin*, 775 F.2d 1261, 1265 (4th Cir. 1985).

It is well-established that the act prohibited by 18 U.S.C. §§ 1341 and 1343 is the wire or the mailing.  The scheme to defraud "is not an 'act' indictable under the mail fraud statute, for though the offense of mail fraud 'has its genesis in the scheme to defraud, the very gist of (the crime) is the use of the mails in executing the scheme.'" *United States v. Weatherspoon*, 581 F.2d 595, 601-602 (7th Cir. 1978)(quoting *United States v. Crummer*, 151 F.2d 958, 962 (10th Cir. 1946)).  Therefore, each wire and each mailing in furtherance of a scheme to defraud may be charged as a separate violation.  *Id.* at 602; *see also Manley v. Fisher*, 63 F.2d 256 (4th Cir. 1933)("[T]he deposit of each letter in the mail for the purpose of executing a

20

scheme to defraud is a separate and distinct violation of the statute."); *United States v. Mancuso*, 799 F. Supp. 567, 569 (E.D.N.C. 1992)("[T]he mail and wire fraud statutes punish each *act* in furtherance, or execution, of the scheme.").

Defendant argues that the Government's theory of liability transforms a single felony into four separate felonies. He contends that he is alleged to have committed a single wrongful act – helping E.R. obtain employment with the CIA – and that imposing liability for each of E.R.'s salary payments renders Counts 9, 11, 12, and 14 multiplicitous.  Defendant highlights the concern that, under the Government's theory, a defendant could be punished an indefinite number of times for a single offense because the number of felonies charged is limited only by the length of the pay period and the duration of the employment.

The Government perceives the SSI differently.  It views Defendant's plan to obtain employment for E.R. as the scheme, and E.R.'s individual paychecks as the acts in furtherance of that scheme.  The Court agrees.  The wrongful act here is not Defendant's efforts to obtain employment for E.R.; those efforts are merely the scheme.  Instead, it is the individual salary payments – the wire transmissions – that are the relevant acts.  Those payments appropriately form the basis of the wire fraud charges in Counts 9, 11, 12, and 14.  Thus, the Court will deny

21

this portion of the Motion to Dismiss.

### D. The False Statement Charges

Finally, Defendant argues that Counts 27 and 28 do not state an offense under 18 U.S.C. § 1001 and should be dismissed as a matter of law.  Because this argument raises serious questions that the Court would like more time to weigh, it will take this particular issue under advisement.  However, given that the Court has rejected all of Defendant's challenges to dismiss the SSI in its entirety, the vast majority of the counts will survive, and the Court can proceed to address Defendant's Motion for a Bill of Particulars.

### III. Motion for a Bill of Particulars

### A. Standard of Review

Pursuant to Rule 7(f), the Court may direct the Government to file a bill of particulars.  The decision whether to grant or deny a motion for a bill of particulars is within the sound discretion of the trial court.  *United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973).  The purpose of a bill of particulars is "to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense."  *United States v. Schembari*, 484 F.2d 931, 934-935 (4th Cir. 1973)(citing *United*

*States v. Dulin*, 410 F.2d 363, 364 (4th Cir. 1969)).  It "is not to be used to provide detailed disclosure of the government's evidence in advance of trial."  *United States v. Automated Medical Labs., Inc*., 770 F.2d 399, 405 (4th Cir. 1985)(citing *Anderson,* 481 F.2d at 690).  Instead, a bill of particulars "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial."  *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996)(citations omitted).  If "the indictment adequately details the charges, or the information requested is otherwise available, then no bill of particulars is required." *United States v. Esquivel*, 755 F. Supp. 434, 436 (D.D.C. 1990)(citing *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987)).  Courts have found a bill of particulars unnecessary where the Government opens its files to the defendant.  *See, e.g., Schembari*, 484 F.2d at 935 (upholding the trial judge's denial of a bill of particulars because "the underlying objectives of a Rule 7(f) motion were fully satisfied by the government's voluntary disclosure of its file"); *United States v. Duncan*, 598 F.2d 839, 849 (4th Cir. 1979)(finding that the "appraisal function of an indictment" may be satisfied if the Government opens its investigative file for the Defendant's inspection).  "Open file" discovery, however, is not required. *See United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 782 (E.D.

23

Va. 2004)(finding a bill of particulars unwarranted where the government had provided and would continue to provide the facts and circumstances of the offense through ongoing discovery).

**B. Analysis**

Defendant argues that the SSI is insufficient because: (1) it refers vaguely to alleged duties and violations of laws without specifying the origin or legal requirements of such duties or laws; (2) it refers to unnamed third party actors involved in the allegedly illegal acts and events; and (3) it fails to allege the date and location of many of the overt acts and false statements that it references.  As a consequence of these alleged insufficiencies, Defendant seeks particulars in several different categories.  The Court will address each category in turn.

1) Alleged Duties and Violations of Law Pertaining to Honest Services Fraud Allegations

First, Defendant requests further explanation of the legal underpinning of the duty of honest services that he owed the United States and its citizens.  Specifically, Defendant seeks the legal source of the "ethical principles" referenced in the introductory allegations of the SSI, as well as the "right to his loyal, faithful, disinterested, unbiased service" referenced in paragraph 2 of the wire fraud counts.  *See* SSI at 2, 4.

Defendant cites case law from other circuits regarding

24

the scope of the duty to provide honest services.  In the Fourth
Circuit, "the legal meaning of 'a deprivation of the intangible
right to honest services' has been extensively developed."
*United States v. Bryan*, 58 F.3d 933, 942 (4th Cir. 1995)
(abrogated on other grounds by *United States v. O'Hagan*, 521 U.S.
642 (1997)); *see also United States v. Geddings*, 2006 WL 4877548,
at *3 (E.D.N.C. Sept. 6, 2006).  The *Bryan* Court noted that
numerous circuits have upheld honest services fraud convictions
for "schemes involving various types of dishonesty by public
officials . . . because such schemes defraud citizens of their
intangible rights to honest and impartial government."  *Id.*

　　　　The Government points to the case law and legislative
history of 18 U.S.C. §§ 1341, 1343 and 1346, as well as the
general ethical standards and rules and regulations governing
public employees, including 5 §§ C.F.R. 2635.101(a), 2635.702(a),
and 2635.502(a)(2), as the source for the duties that Defendant
owed the public.  The Court finds that these sources are
sufficient to inform Defendant of the origin of the duty to
provide honest services.  Any dispute about the precise
definition of honest services is a matter to be resolved if and
when the Court instructs the jury.

### 2) Dates, Specific Time, and/or Location of Acts

　　　　Defendant requests specific dates, times, and locations
of events supporting the charges, including of the employment

negotiations and the false statements.  "Where a particular date
is not a substantive element of the crime charged, strict
chronological specificity or accuracy is not required."  *United
States v. Smith*, 441 F.3d 254, 261 (4th Cir. 2006)(quoting *United
States v. Kimberlin*, 18 F.3d 1156, 1159 (4th Cir. 1994)); *see
also United States v. Poe*, 1996 WL 139200, at *2 (4th Cir. Mar.
26, 1996)("Even though the indictment did not provide the exact
time of day or the precise location [of the offense], . . . the
district court did not abuse its discretion in denying [the
defendant's] motion for a bill of particulars.").  Here, the SSI
itself answers many of Defendant's requests, including his
question about a "negotiation" or an "arrangement concerning
prospective employment."  *See* SSI ¶ 4(1)("By no later than
December 2002, Wilkes offered [Defendant] a high-level, high-
paying position in Wilkes's companies, which offer remained open
throughout all times material to this indictment.").  The
disclosure of any further detail is simply not required.

> ### 3) Identities of Unnamed Individuals and Unnamed
> ### Entities

Defendant requests the names of people who attended
dinners with him on specified dates at identified restaurants, as
well as other individuals involved in specific events.  Courts
have held that "the Government is not required to furnish the
name of all other co-conspirators in a bill of particulars."

*United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004)
(citation omitted); *see also, e.g., United States v. Torres*, 901
F.2d 205, 233-34 (2d Cir. 1990)(affirming the denial of a bill of
particulars requesting, *inter alia*, the names of known but
unnamed conspirators); *United States v. Colson*, 662 F.2d 1389,
1391 (11th Cir. 1981)(affirming the denial of a request for the
names of unindicted co-conspirators).  The Government contends
that review of the discovery would provide answers to Defendants
questions, and notes that Defendant himself would be the best
source for this particular information.

        A bill of particulars is unnecessary when "it appears
that defendants are sufficiently apprised through discovery of
the facts and circumstances of the offense." *Cuong Gia Le*, 310
at 782; *see also United States v. West*, 877 F.2d 281, 293 (4th
Cir. 1989)("In the absence of any showing of unfair surprise, we
find no error in the district court's denial of [the defendant's]
motion for a bill of particulars to discover the identities of
unnamed 'Known Individuals' referred to in the indictment.").
Here, Defendant admits knowing the identity of the co-
conspirators listed in the SSI.  Thus, the Court need not order
their disclosure.

        4) General Discovery Requests

        Finally, Defendant requests a variety of details
regarding how, where, and why various acts were committed by

27

himself and others during the scheme.  A defendant is not
entitled to have the Government specify the details of its proof
of acts or allegations set forth in the indictment, nor is he
entitled to have the Government furnish the precise manner in
which the crimes charged were committed.  *See Automated Medical
Labs.*, 770 F.2d at 405 ("A bill of particulars is not to be used
to provide detailed disclosure of the government's evidence in
advance of trial."); *United States v. Kilrain*, 566 F.2d 979, 985
(5th Cir. 1978)("[D]efendants are not entitled to discover all
the overt acts that might be proved at trial.").  Defendant may
continue to make discovery requests as appropriate.  But the
details Defendant seeks in the remainder of his requests are not
the type of information required "to enable a defendant to obtain
sufficient information on the nature of the charge against him so
that he may prepare for trial, minimize the danger of surprise at
trial, and enable him to plead his acquittal or conviction in bar
of another prosecution for the same offense."  *Schembari*, 484
F.2d at 934-935.

    **C. Conclusion**

        For the reasons outlined above, the Court finds that
the SSI meets the requirements of Fed. R. Crim. P. 7 and fairly
informs Defendant of the charges against him and permits him to
adequately prepare a defense, minimize the danger of surprise at
trial, and plead double jeopardy in a future prosecution for the

same offenses.  The Court will therefore deny Defendant's Motion
for a Bill of Particulars.

### IV.  Conclusion

For these reasons, the Court will deny in part
Defendant's Motion to Dismiss and take under advertisement the
question of whether Counts 27 and 28 should be dismissed.  The
Court will also deny Defendant's Motion for a Bill of
Particulars.

July 14, 2008                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE