FILED IN OPEN COURT
SEP 2 9 2008
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:08cr0079 (JCC) |
| | ) | |
| KYLE DUSTIN FOGGO, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

Were this matter to go to trial, the United States of America would prove the following facts beyond a reasonable doubt:

1. From on or about July 6, 2001 to about November 3, 2004, defendant KYLE DUSTIN FOGGO was the senior officer in charge of support operations at an "Overseas Location" of the Central Intelligence Agency ("CIA"), and as such directed the Overseas Location's daily operations supplying equipment to personnel overseas.

2. From on or about November 4, 2004 to on or about May 12, 2006, FOGGO was the Executive Director of the CIA (then the third-highest position in the CIA), and as such directed the CIA's daily operations.

3. As a public official, FOGGO owed the United States and its citizens his honest services.

4. From in or about 1993 through in or about 2005, FOGGO completed CIA ethics training eight times, and served approximately two years as a Deputy Ethics official.

5. Throughout the duration of the scheme described in Count One of the Second Superseding Indictment, Brent Roger Wilkes was FOGGO's best friend.

6. Throughout the duration of the scheme described in Count One of the Second Superseding Indictment, Wilkes controlled ADCS, Inc. and numerous related entities, including Archer Defense Technologies, Inc., Archer Logistics, Inc., Group W Advisors Inc., Group W Transportation Inc., TPG Advisors, and Wilkes Corporation.

7. From late 2002 on, Wilkes's main corporate office was at 13970 Stowe Drive, Poway, California. Wilkes also maintained an office located at 14020 Thunderbolt Place, Chantilly, Virginia.

8. Throughout the scheme described in Count One of the Second Superseding Indictment, "J.C." was Wilkes's nephew. Among other roles, J.C. held the title of President of Archer Logistics, Inc.

9. Throughout the duration of the scheme described in Count One of the Second Superseding Indictment, "A.J." was a foreign national and associate of FOGGO's while FOGGO was stationed at the Overseas Location.

10. Beginning in or about December 2002, and continuing through in or about September 2006, within the Eastern District of Virginia and elsewhere, FOGGO devised and intended to devise a scheme: (1) to defraud, including depriving the United States and its citizens of their right to FOGGO's honest services, including their right to his loyal, faithful, disinterested, unbiased service, to be performed free of deceit, undue influence, conflict of interest, self-enrichment, self-dealing, concealment, fraud, and corruption; and (2) to obtain money and property by means of materially false and fraudulent pretenses and representations, and concealment and omissions of material facts.

11. FOGGO, through direct and indirect instructions, abused his supervisory positions with the CIA in order to cause the CIA to hire companies or individuals with whom FOGGO had a personal relationship (Foggo's Friends).

2

12. In furtherance of the scheme described in Count One of the Second Superseding Indictment, FOGGO concealed from others at the CIA: (1) his close personal relationships with Wilkes and J.C.; (2) his open offer of employment from Wilkes; and (3) Wilkes's connection to CIA contracts.

13. FOGGO allowed Wilkes to conceal their close personal relationship through, among other things: (1) adopting false cover stories regarding the bases for, and the nature of, their relationship; and (2) using straw men and shell companies to conceal Wilkes's financial interest, personal stake, and controlling role in certain CIA contracts.

14. By no later than December 2002, Wilkes offered FOGGO a high-level, high-paying position in Wilkes's companies, which offer remained open throughout the scheme.

15. On or about February 21, 2003, Wilkes executed a Certification of Trust naming FOGGO, upon the death of Wilkes and his wife, as one of three Trustees of the "Brent and Regina Wilkes Family Trust."

16. On or about September 10, 2003, FOGGO sent Wilkes an email titled "Scotland and Cigars," stating in part: "I'll work the water thing with [A.J.] ... but you sending a follow-up email is a good idea, I want to insure [sic] that B-connection is not forgotten. ... Group W is in this deal."

17. On or about September 17, 2003, FOGGO sent an email to Wilkes, stating that A.J. was ready to work with Wilkes, and that Wilkes should "work the price" with [A.J.] "and then have a US firm (Group W?) fax to me an offer to sell at X price."

18. On or about May 27, 2004, FOGGO executed a "Certification of Trust," naming him as Sole Trustee of the "Brent Wilkes Life Insurance Trust" and naming the Trustor as Brent Wilkes.

3

19. On or about June 16, 2004, FOGGO sent an email to a private security firm, referencing "a possible venture that could be useful for Archer Defense" and the private security company.

20. On or about September 10, 2003, within the Eastern District of Virginia, for the purpose of executing the scheme described in Count One of the Second Superseding Indictment, FOGGO transmitted and caused to be transmitted in interstate commerce by means of wire communications an email regarding "Scotland & Cigars," in which FOGGO offered to "work" the "water thing" and "insure" that "Group W is in this deal."

Respectfully submitted,

CHUCK ROSENBERG
UNITED STATES ATTORNEY

By: _____
Valerie H. Chu
Special Assistant United States Attorney

By: _____
Jason A. Forge
Special Assistant United States Attorney

By: _____
Phillip L.B. Halpern
Special Assistant United States Attorney

I have read all five pages of this Statement of Facts, and after consulting with my attorneys and pursuant to the plea agreement entered into this day between the myself and the United States, I hereby state under penalty of perjury that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

By: _____
KYLE DUSTIN FOGGO

We are counsel for defendant FOGGO. We have carefully reviewed the above Statement of Facts with him. To our knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Mark J. MacDougall
Attorney for KYLE DUSTIN FOGGO

_____
Paul W. Butler
Attorney for KYLE DUSTIN FOGGO

_____
W. Randolph Teslik
Attorney for KYLE DUSTIN FOGGO

5