IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
UNITED STATES OF AMERICA        )
                                )
          v.                    )
                                )    1:08cr79 (JCC)
KYLE DUSTIN FOGGO,              )
     a/k/a "DUSTY" FOGGO,       )
                                )
     Defendant.                 )
```

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on the Government's Motion for an Order Allowing the Use of Grand Jury Transcripts for Sentencing.  For the following reasons, the Court will grant in part and deny in part the Government's Motion.

### I. Background

On February 13, 2007, Defendant Kyle Dustin Foggo ("Defendant") and co-conspirator Brent Roger Wilkes ("Wilkes") were indicted in the Southern District of California on an 11-count indictment alleging conspiracy, honest services wire fraud, and § 1957 money laundering.  During all times pertinent to this case, Defendant was a high-ranking official with the Central Intelligence Agency ("CIA") and Wilkes was a government contractor.  As alleged in the initial indictment, Defendant and Wilkes, who were lifelong friends, used a shell corporation to enable Defendant to steer $2 million in procurement services

1

contracts with the CIA to Wilkes.[1]  The initial indictment was followed on May 10, 2007 by a 30-count superseding indictment, which alleged additional wire fraud and money laundering counts against Defendant and Wilkes.  These additional counts related to a number of proposed projects, including a $132 million contract to provide air support services to the CIA, which Defendant, after assuming the position of Executive Director of the CIA, attempted to steer to Wilkes.

Defendant sought on two occasions to have the case transferred from the Southern District of California to the Eastern District of Virginia ("EDVA").  On April 17, 2007, Defendant filed a motion to transfer venue and to sever his case from the case against Wilkes.  The Court denied this motion without prejudice on May 14, 2007.  Defendant renewed his motion to sever and transfer on December 11, 2007.  In response, the Government indicated that it did not oppose transfer because it had recently uncovered evidence that would support additional charges for which venue was proper only in the EDVA.  The case was then transferred to the EDVA on February 19, 2008.

Following transfer, on May 20, 2008, an EDVA grand jury

---

[1] Wilkes was also separately charged in a conspiracy to bribe former Congressmen Randy "Duke" Cunningham, along with a co-defendant named John Michael.  On November 5, 2007, Wilkes was convicted of all counts, including conspiracy, honest services wire fraud, bribery, and money laundering.  On February 8, 2008, Wilkes was sentenced to 144 months' imprisonment, ordered to forfeit $636,116.50, and required to pay a $500,000 fine and $1,300 in penalty assessments.  The charges against Wilkes in the present case were dismissed on February 19, 2008 upon the Government's motion.

returned a 28-count second superseding indictment (the "SSI")
alleging wire and mail fraud, conflict of interest, § 1957 money
laundering, conspiracy to commit § 1957 money laundering, and
false statements.  Most of the charges, for wire and mail fraud,
stemmed from Defendant's scheme to defraud, which included
depriving the United States and its citizens of their right to
Defendant's honest services, and his scheme to obtain money and
property by means of materially false and fraudulent pretenses
and representations.

On September 29, 2008, Defendant pled guilty to Count I
of the SSI, which charged him with wire fraud.  A statement of
facts was submitted along with the plea agreement.  After taking
Defendant's plea, the Court dismissed the remaining charges in
the SSI (Counts II to XXVIII).  On November 20, the Government
filed the instant motion.  Defendant responded with a brief in
opposition on December 2, and the Government replied on December
5.  This motion is before the Court.

## II. Analysis

Under Rule 6(e)(2) of the Federal Rules of Criminal
Procedure, Government attorneys are among those persons who
"shall not disclose matters occurring before the grand jury,
except as otherwise provided for in these rules."  Rule 6 allows
the disclosure of grand jury matters when authorized by a court
"preliminary to or in connection with a judicial proceeding."

Fed. R. Crim. P. 6(e)(3)(E)(i).  The decision whether to order the disclosure of grand jury testimony is within the court's discretion.  *In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1298-99 (4th Cir. 1986).

The Supreme Court has held that the secrecy of the grand jury "must not be broken except where there is a compelling necessity."  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).  The Court cited a Third Circuit opinion for the traditional reasons underlying grand jury secrecy:

> "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*Procter & Gamble Co.*, 356 U.S. at 681 n.6 (quoting *United States v. Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954)).  Here, as the grand jury has already finished its deliberations and Defendant has pled guilty, factor (4) states the most applicable reason for continued secrecy.  *See United States v. Alexander*, 860 F.2d 508, 514 (2d Cir. 1988).

*Procter & Gamble Co.* held that grand jury secrecy could be "lifted discretely and limitedly" in cases of "particularized

4

need." *Id.* at 683.  In a subsequent case, the Court formulated

its test for a "particularized need" as follows:

> Parties seeking grand jury transcripts under Rule 6(e)
> must show that the material they seek is needed to avoid
> a possible injustice in another judicial proceeding, that
> the need for disclosure is greater than the need for
> continued secrecy, and that their request is structured
> to cover only the material so needed.

*Douglas Oil Comp. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 222

(1979).  The Fourth Circuit has explained this "particularized

need" inquiry as requiring the trial court to "balance the

petitioner's need for release against the traditional public

interest reasons for grand jury secrecy"; "'only in those cases

where the need for [disclosure] outweighs the public interest in

secrecy' will the requirement of 'particularized need' for

release be found to exist."  *In re Grand Jury Proceedings GJ-76-4

& GJ-75-3*, 800 F.2d at 1298-99 (quoting *United States v. Sells

Eng'g, Inc.*, 463 U.S. 418, 443 (1983)).  The moving party bears

the burden of showing that the balance between secrecy and need

weighs in its favor.  *Id.*

    In this case, the Government requests a court order,

pursuant to Rule 6(e)(3)(E)(i), allowing the release of grand

jury transcripts made in the EDVA.  The requested order would

allow the Government and Defendant to prepare sentencing

arguments, enable Defendant to respond to the Government's

sentencing arguments, and provide the Court with the relevant

facts and circumstances necessary for it to exercise its
sentencing discretion.  Mem. in Supp. at 3.  The Government
claims that the sworn testimony of grand jury witnesses will
allow the Court to assess Defendant's criminality and impose an
appropriate sentence.  *Id.*  The Government also asserts that the
disclosure should be public because the public has a right of
access to the case.  *Id.* at 2-3.  The requested order would allow
the Government to provide the Court with copies of grand jury
materials and refer to such materials in its sentencing pleadings
and its arguments at the sentencing hearing.  *Id.* at 5; *see id.*
at Ex. 1 (Proposed Order).

Defendant contends that the Government has not made the
"particularized showing" required by *Douglas Oil*.  Additionally,
Defendant argues that if the Court decides to admit the grand
jury materials, it should keep them out of the public record.[2]

A.  *United States v. Manglitz*

The Government relies heavily on the Fourth Circuit's
decision in *United States v. Manglitz*, 773 F.2d 1463 (4th Cir.
1985).  *Manglitz* held that "the government is not required to
obtain a court order under Rule 6 before it discloses grand jury

_____

[2] Defendant also requests access to all grand jury transcripts from the
investigation if the Court allows the Government to use any such transcripts
at the sentencing hearing.  The Government states that it has already provided
copies of all grand jury transcripts relevant to Defendant's case, including
all the information that the Government seeks to use during sentencing.  Reply
Br. at 11 n.6.  For this reason, the Court sees no need to consider this
additional request.

material during a Rule 11 hearing as a part of its duty to inform the court of a factual basis to support the plea." *Id.* at 1466. The district court handling Manglitz's case had conducted a Rule 11 hearing pursuant to a plea agreement between Manglitz and the United States. During the hearing, the prosecution disclosed grand jury material to meet the requirement that it show what facts it would have proven had the case gone to trial. *Id.* at 1464; *see* Fed. R. Crim. P. 11(b)(3). The court used the same grand jury material at sentencing. *Id.* at 1465. Manglitz did not object to the court's use of grand jury materials at sentencing. Instead, he objected to the entry of grand jury information into the public record during his Rule 11 hearing. *Id.*

Looking at the use of grand jury information in the context of plea agreements, the Fourth Circuit distinguished the traditional reasons for grand jury secrecy discussed in *Douglas Oil* and *Procter & Gamble* – cases that looked to whether a "particularized need" would justify lifting the grand jury secrecy required by Rule 6(e). *Id.* at 1466; *see Douglas Oil Co.*, 441 U.S. at 228-29; *Proctor & Gamble Co.*, 356 U.S. at 683. Noting that "[t]he rule of grand jury secrecy is not absolute," the *Manglitz* court stated its belief that:

> [A] prosecutor, in performing his duty to enforce the criminal laws of the United States, is not required to obtain a court order prior to disclosing grand jury

> material at a Rule 11 hearing as long as the material
> is relevant to the question of guilt *or if it will*
> *assist the Court in sentencing the defendant*.

773 F.2d at 1467 (emphasis added).  The Government suggests that
the phrase "as long as the [grand jury] material . . . will
assist the Court in sentencing the defendant" means that, under
controlling Fourth Circuit precedent, it could have disclosed
grand jury information at Defendant's sentencing even without an
order from this Court.  Thus, it argues, such disclosure must be
permissible.

The Government's reading of *Manglitz* is not obviously
incorrect.  The disjunctive "or" in the above-quoted phrase
could, read one way, sever the phrase "if it will assist the
Court in sentencing the defendant" from the phrase "at a Rule 11
hearing."  Such a reading would suggest that prosecutors could
*always* disclose grand jury material at a sentencing hearing, with
or without a court order.

Considering the opinion as a whole, however, the better
reading confines the nearly unfettered disclosure of relevant
grand jury materials to the context of a Rule 11 plea agreement
hearing, when the requirements of Rule 11 make necessary such a
disclosure.  The *Manglitz* court grounded its statement in the
requirement that, at plea agreement hearings – which must be held
in open court – the Government has to state the facts that it

8

would have proved at trial.  *See* Fed. R. Crim. P. 11(b)(1).

Indeed, the very next line after the portion of the opinion

quoted above refers exclusively to the plea agreement hearing:

"The district court under Rule 11[] is required to determine the

accuracy of the plea."  *Manglitz*, 773 F.2d at 1467.

 The concluding portion of the opinion confirms this

more limited interpretation.  There, the court stated the

following:

> The [grand jury] information introduced was relevant to
> the guilty plea and the district judge relied upon it in
> sentencing the defendant.  If a prosecutor did exceed the
> scope of his authority and reveal voluminous grand jury
> materials that were not relevant to the question of the
> defendant's guilt or would not assist the court in
> sentencing the defendant, then the district court has the
> discretion to seal the public record. . . . Otherwise,
> the proceedings of guilty plea hearings in which grand
> jury materials were used would be closed to the public,
> *and the information used to sentence the defendant would*
> *be unavailable*.

*Id*. at 1468 (emphasis added).  This section of the opinion

highlights the importance of the district court's reliance, at

sentencing, on the grand jury information presented during

Manglitz's plea agreement hearing.  The Fourth Circuit's concern

was that, without allowing these relied-upon grand jury materials

into the public record at the guilty plea hearing, the basis for

the guilty plea would be secret; thus, the district court would

later sentence the defendant without the public's awareness of

what led to the sentence imposed.  Without the material disclosed

9

at the Rule 11 hearing, the court would have had no basis on which to sentence the defendant.  The final line of the opinion confirms that the case's holding dealt specifically with information disclosed at Rule 11 hearings: "the district court has the power to check any alleged improper disclosures that are pretextual *at the time of the guilty plea hearing* by later sealing the record."  *Id.* (emphasis added).

The distinction between a prosecutor's ability to publicly disclose grand jury information at a Rule 11 hearing and the more limited ability to disclose such information at sentencing makes sense.  At a Rule 11 plea agreement hearing, "the court must address the defendant in open court."  Fed. R. Crim. P. 11(b)(1).  The court must also "determine that there is a factual basis for the plea."  Fed. R. Crim. P. 11(b)(3).  On the rare occasion that the Government can only state the factual basis for the plea using grand jury information, public disclosure of grand jury materials must be acceptable – as *Manglitz* held.

At sentencing, by contrast, the Government will have already established – at the plea agreement hearing, held in open court – facts that support the finding of guilt.  The central reason for the Court's sentence, then, is already on record; the same compelling need to make additional information considered by

the court a part of the record does not exist.[3] "With respect to sentencing, as contrasted with determinations of the defendant's guilt, there is no requirement that the court consider only evidence adduced in open court." *United States v. Alexander*, 860 F.2d 508, 514 (2d Cir. 1988) (citation omitted). In preparation for sentencing, courts regularly consider a broad range of information, not all of which must be disclosed publicly. For example, prior to sentencing, a court considers a confidential pre-sentence report prepared by the Probation Office pursuant to Rule 32. *Id.*; Fed. R. Crim. P. 32. A court may also consider letters from family and friends of the defendant. There has never been a requirement that courts publicly disclose all the information that they consider in preparation for sentencing.

*Manglitz*, then, should not be read to suggest that the Government can freely introduce secret grand jury testimony for the first time at sentencing. A contrary interpretation would stretch the reasoning in the case beyond the logical boundary set by the Fourth Circuit. Indeed, other courts that have looked at

---

[3] This observation may help explain the *Manglitz* opinion's confusing use of language about the use of grand jury materials at sentencing. During sentencing, the district court in that case specifically relied on the grand jury information first disclosed at the guilty plea hearing. *Manglitz*, 773 F.2d at 1465. If the defendant was correct that the information should not have been disclosed at the guilty plea hearing, then the court would have had no basis on which to accept the plea and thus no basis on which to sentence the defendant. In many other cases, by contrast – including the case at bar – district courts rely on an agreed-upon statement of facts as the factual basis for the plea. Thus, sentencing can go forward, in a perfectly legitimate manner, with or without grand jury information.

the grand jury information issue in the context of sentencing have held that the normal Rule 6(e) requirements of a "particularized need" apply at sentencing.  *See Alexander*, 860 F.2d at 513; *see also United States v. Smith*, 992 F. Supp. 743, 751, 754 (D. N.J. 1998).

B. *United States v. Alexander*

The *United States v. Alexander* case is especially instructive.  In denying a request for the public release of grand jury information similar to the one made here, the Second Circuit considered a sentencing to be a "judicial proceeding" under what is now Rule 6(e)(3)(E)(i), which allows a court to authorize the disclosure of grand jury materials "preliminarily to or in connection with a judicial proceeding."[4]  860 F.2d at 512.

The court then drew a distinction between two situations: the *in camera* disclosure of grand jury materials to a court for consideration in sentencing, and the public disclosure of such materials.  Because a court is "'virtually unfettered'" with respect to the information it may consider in sentencing, the government's desire to put before the sentencing court relevant information about other crimes committed by a defendant

_____

[4] In most cases involving the disclosure of grand jury materials, the "judicial proceeding" for which such materials are released is a separate but factually-related case.

12

"provided ample reason for the court to direct disclosure of the grand jury materials" to itself.  *Id.* at 513 (citing *Williams v. New York*, 337 U.S. at 246-50)).  Use of the materials by the sentencing court alone would comport with the *Douglas Oil* requirements.  *Id.*  In contrast, disclosure to the general public would not be justified unless the interests of secrecy were outweighed by a need for public filing.  *Id.* at 514.

The court went on to explicitly reject the argument that the government could disclose grand jury materials during a sentencing hearing without a court order.  "Rule 6 confers no such privilege; nor are we aware of any need for the government to place grand jury materials in the open record in connection with such proceedings."  *Id.*  The Second Circuit contrasted the situation presented by a Rule 11 hearing, where a judge can consider only evidence given in open court, with a sentencing hearing, for which the court could be given grand jury information in a sealed document – much like the pre-sentence report typically considered prior to sentencing.  *Id.*

Taken together, the decisions in *Manglitz* and *Alexander* help set the boundaries for the disclosure of grand jury information in the present case.  While they caution against unfettered public disclosure except where necessary, the cases also imply that limited disclosure may be appropriate at the sentencing stage.

13

C. Use of Grand Jury Materials by the Court

Defendant argues that the Court should not allow the Government to disclose grand jury materials to the Court in connection with sentencing.  Citing the *Douglas Oil* test for the existence of a "particularized need," Defendant contends that the Government has not shown (1) that it needs the transcripts to "avoid a possible injustice" at sentencing; (2) that the need for disclosure outweighs the need for continued secrecy; and (3) that it structured its request to limit the disclosure to "needed" grand jury materials.  *See Douglas Oil*, 441 U.S. at 222.

The Government responds by pointing to the trial court's wide discretion to consider a broad range of information before sentencing a defendant.  In particular, it cites 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Prior to sentencing, a court can "'conduct an inquiry broad in scope, largely unlimited either as to [the] kind of information he may consider, or the source from which it may come.'" *United States v. Lee*, 540 F.2d 1205, 1210 (4th Cir. 1976) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)).  A court can consider reliable but illegally-obtained evidence, *see*

14

*id.* at 1211, or hearsay, *see United States v. Puckett*, 61 F.3d 1092, 1095 (4th Cir. 1995), for sentencing purposes.  At the outset, then, it is clear that the Court has wide discretion to consider the information contained in the grand jury materials.

The Court finds that the release of grand jury materials to the Court alone is both permitted and warranted in this case.  First, the *Douglas Oil* test urged by Defendant does not apply neatly in this situation.  The test was promulgated to deal with the more typical request for the release of grand jury materials: when a party in a civil lawsuit asks for grand jury testimony from a prior criminal case.  *See Douglas Oil Co.*, 441 U.S. at 222 ("the material . . . is needed . . . in another judicial proceeding").

Here, the information to be "disclosed" to the Court comes from grand jury testimony preceding a conviction in the case for which the grand jury was convened.  The grand jury has already finished its work, and most of the factors favoring secrecy that concerned the Supreme Court in *Procter & Gamble* and *Douglas Oil* are not present.  Because the Court has the authority to consider a wide range of materials prior to sentencing, and because the disclosure in this case will be limited to the Court itself, such disclosure will serve the purpose of fully informing the Court about the nature and circumstances of Defendant's conduct while respecting the traditional veil of secrecy

15

protecting grand jury proceedings.   *See* 18 U.S.C. § 3661.

While the *Douglas Oil* test does not mesh neatly with the purpose of the disclosure here, the Court is satisfied that the Government's request to disclose grand jury information to the Court alone fulfills the requirements of that case.  First, the material is necessary to avoid a possible injustice because it will provide the Court with information relevant to imposing a just sentence.

Second, the usefulness of disclosure to the Court outweighs the need for continued secrecy: disclosure is useful because it will provide the Court with information to help guide its sentencing discretion, and the incursion into the traditional secrecy of the grand jury is extremely limited when such information is reviewed only *in camera*.

Third, the Government stated at oral argument that it seeks to introduce only the small portion of the grand jury proceedings relevant to sentencing.  The testimony of Defendant's colleagues regarding his activities at the CIA related to the charged offenses will assist the Court in understanding the extent of Defendant's wrongdoing in this fact-intensive case.  In the context of sentencing, where the Court has a duty to consider the nature and circumstances of the offense, this justification for a limited release fulfills the requirement for "particularity."

16

Moreover, the grand jury material will be released to the Court only for the limited purpose of sentencing. "For purposes of sentencing, . . . the court is virtually unfettered with respect to the information it may consider. . . . the court may appropriately authorize the government to disclose to it grand jury materials for its use in considering what sentence to impose." *Alexander*, 860 F.2d at 513 (citations omitted); *see* 18 U.S.C. § 3661. The Court finds the limited disclosure of grand jury materials to the Court, for the purposes of sentencing, appropriate in this case.

D. <u>Public Disclosure</u>

The Government also seeks to disclose the grand jury materials publicly, use them in its sentencing memorandum, and argue from them in open court. Defendant objects to public disclosure. As one consideration against public disclosure, he cites the non-adversarial nature of the grand jury proceedings, during which Defendant was not able to cross-examine the witnesses against him. Releasing potentially damaging but untested grand jury testimony to the public, he contends, would be unfair and inappropriate. On balance, the Court finds that the interest in preserving the secrecy of grand jury proceedings outweighs any plausible justification for the public disclosure of the materials.

The Government has not provided a compelling argument

17

for why the public should be privy to the grand jury proceedings in this case.  First, as discussed *supra*, *Manglitz* does not allow the Government to side-step the requirements of Rule 6(e) at the sentencing phase.  And while public access to sentencings does serve the valuable ends of openness and transparency in the criminal justice system, it is typical for courts to consider non-public information prior to sentencing, e.g., a pre-sentence report.  The consideration of non-public material to aid the Court in exercising its sentencing discretion does not undercut the validity of the sentence handed down or the plea agreement itself.

Additionally, the public disclosure of grand jury information at sentencing would not, in this case, pass the *Douglas Oil* requirement that "the material . . . is needed to avoid a possible injustice."  *Douglas Oil Co.*, 441 U.S. at 222. The need for continued secrecy may have diminished after the grand jury concluded its proceedings.  The justification for continued secrecy, though, looks forward as well as back: "in considering the effects of disclosure on grand jury proceedings, the courts must [also] consider . . . the possible effect upon the functioning of future grand juries."  *Id.*  The Court is hard-pressed to understand how sentencing the Defendant without the unusual step of publicizing grand jury information could be considered an "injustice."  If, as the Government claimed at oral

18

argument, it has a duty to expose to the public all of the wrongdoing supposedly detailed in the grand jury transcripts, it could have bargained for such a right in the plea agreement or taken this case to trial.

The Government's last argument for public disclosure relies on the case *In re Washington Post*, 807 F.2d 383 (4th Cir. 1986), in which the Fourth Circuit held that a "First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves." 807 F.2d at 390. The Fourth Circuit found that the district court had improperly sealed a sentencing hearing and affidavits, also filed under seal, that supported the motion to conduct the sentencing *in camera*. *See id.* at 387.

The Government argues that it should be able to submit grand jury transcripts for use in sentencing and that, because they are used in sentencing, the public has a First Amendment right to them under *In re Washington Post*. That case, however, is completely distinguishable in the context presented here. First, the Government's argument would require, in any situation where it submitted grand jury transcripts for use in sentencing, the disclosure of those transcripts to the public. This would eviscerate the secrecy of the grand jury in any case in which a court agreed to consider grand jury information in preparation

19

for sentencing. *In re Washington Post* simply does not require such a result.

The case's holding is much more limited than the Government implies. *In re Washington Post* dealt with affidavits and motions that themselves affected the public's right of access to a sentencing hearing; the documents at issue supported the prosecution's request for an *in camera* sentencing and were also filed under seal. *Id.* at 389-90 (discussing the question "whether the First Amendment right of access also applies to written documents submitted in connection with judicial proceedings which themselves implicate the right of access."); *see also In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) (construing *In re Washington Post* as ruling on "documents . . . that themselves implicate the right of access."). The case did not touch on, and did not create a public right of access to, the information that a judge can consider "for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The First Amendment right of access to sentencing hearings does not interfere with the court's traditional role in reviewing information, some of it confidential, in preparation for sentencing.

Further, *In re Washington Post* dealt with documents "*filed* in connection with . . . sentencing hearings" – that is, motions and affidavits concerning the status of the hearings

20

themselves, which would normally appear on the docket sheet – not documents submitted to aid the court in exercising its sentencing discretion.  807 F.2d at 390.  The harm that *In re Washington Post* redressed "was the fact that the public had no notice that sealed proceedings were occurring at all." *United States v. Bilbrey*, 896 F. Supp. 1207, 1209 (M.D. Fl. 1995).  That situation simply is not present here.  In this case, the Government has not shown that disclosure would meet the test under *Douglas Oil* or that the First Amendment requires public disclosure.  The Court finds that the need for disclosure does not outweigh the need to protect the traditional secrecy of the grand jury.

### III. Conclusion

For the foregoing reasons, the Government's Motion for an Order Allowing the Use of Grand Jury Transcripts for Sentencing will be granted in part and denied in part.  The Court will allow the parties to submit a limited amount of information from the grand jury transcripts for *in camera* review.  The Court will not, however, allow any public disclosure of grand jury information.

An appropriate Order will issue.


January 26, 2009                    _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                          UNITED STATES DISTRICT COURT JUDGE